**CITY OF SPENCER, Iowa, for the Use and Benefit of SPENCER MUNICIPAL UTILITIES, Appellant,**

**v.**

**HAWKEYE SECURITY INSURANCE COMPANY, Appellee.**

**No. 56313.**

Supreme Court of Iowa.

March 27, 1974.

Rehearing Denied April 18, 1974.

Smith & Grigg, Primghar, and Miller, Miller & Miller, Cherokee, for appellant.

Hamilton, Connell, Redenbaugh & Duffy, Storm Lake, for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and REYNOLDSON, JJ.

REYNOLDSON, Justice.

Defendant Hawkeye Security Insurance Company (Hawkeye) issued its commercial multi-cover (including general liability and automobile liability insurance) policy to Spencer Municipal Utilities (Utilities) on July 24, 1968.

November 20, 1968, two persons working for Utilities, Roberts and Mead, were operating a boom truck assisting in decorating the town for the Christmas season. Through their conceded negligence, the truck, licensed to Utilities, came into contact with a cable extending across the street. The cable was attached to a building cornice, which was pulled off. It fell on and severely injured Jones, an employee of the City of Spencer.

Jones sued Utilities, Roberts, Mead, and others. Counsel employed by Hawkeye filed a special appearance for Utilities which was sustained. The same counsel first appeared for Roberts and Mead under a reservation of rights, claiming the insurance contract provided no coverage as to them. Later this counsel withdrew his appearance and answer. Utilities then retained counsel for the defense of Roberts and Mead and the cause proceeded to trial.

In the course of trial Utilities agreed to pay Jones $88,000 and pay the court costs as consideration for a covenant not to proceed further against Roberts and Mead. It is conceded this was a reasonable sum. Jones' lower left leg had been amputated and his medical expenses, future medical expenses and loss of earnings totaled $16,627.91 at trial date.

Before the above sum was paid Utilities made a complete disclosure and demanded that Hawkeye pay the negotiated sums. Hawkeye refused, and Utilities paid the agreed amounts.

Utilities then brought suit against Hawkeye on its policy for the sums paid and attorney fees incurred. Hawkeye filed a motion to dismiss on the ground Utilities lacked statutory authority to sue or be sued, which motion was sustained. This action (grounded on the policy) was then filed, plaintiff being "City of Spencer, Iowa, for the Use and Benefit of Spencer Municipal Utilities."

Hawkeye, answering, denied § 613A.7 authorized Utilities to acquire the insurance, and alleged Jones, Mead and Roberts were all employees of the City of Spencer, Jones was paid workmen's compensation and its policy precludes coverage in instances of injury to fellow employees where the claim is covered by workmen's

compensation. Further answering, Hawkeye alleged Utilities was a non-suable entity, § 613A.8, The Code, is not applicable to it, the payments made by Utilities were voluntary "under the terms of the insurance policy" and no liability existed for the payment of the amounts under § 613A.8, The Code.

Responding to a request for admissions, Hawkeye conceded it declined to defend the action filed by Jones against Roberts and Mead because it concluded no coverage was afforded under its policy.

Trial court held Jones, Mead and Roberts were fellow employees, coverage for Jones would thus be excluded under the policy, and Utilities' payment was merely voluntary and without authority.

Appealing, the City on behalf of Utilities contends Jones was not a fellow employee of Mead and Roberts and his claim does not fall within the fellow-employee exclusion of the policy; that Utilities was legally obligated to defend and save harmless its employees under the provisions of § 613A.8, The Code.

### I. *Scope of Review*

◼ Where the facts are not in material dispute, interpretation placed thereon by trial court becomes a question of law which is not conclusive on appeal. Hull-Dobbs Motor Co. v. Associates Discount Corp., 241 Iowa 1365, 44 N.W.2d 403 (1950). The facts in this law action are not disputed. For that reason and because no conflicting inferences may be drawn from the facts, we may interfere in the judgment entered below. Frantz v. Knights of Columbus, 205 N.W.2d 705, 708 (Iowa 1973); Beneficial Finance Company of Waterloo v. Lamos, 179 N.W.2d 573, 578 (Iowa 1970); Alsco Iowa, Inc. v. Jackson, 254 Iowa 837, 840, 118 N.W.2d 565, 567 (1962).

### II. *Was Jones a fellow employee of Roberts and Mead within the meaning of*

*the fellow-employee exclusion of Hawkeye's policy?*

Hawkeye's policy designated the "named insured" as "Spencer Municipal Utilities, 712 N. Grand Avenue, Spencer, Iowa 51301." Premium notices were billed to Utilities. An exclusion under the comprehensive general liability section provides the insurance shall not apply " * * * to bodily injury to an employee of the insured arising out of and in the course of his employment by the insured * * *." For an additional premium a separate endorsement entitled "ADDITIONAL INSURED (Employees)" amended the "Persons Insured" provision of the policy "to include any employee of the *named insured*." However the endorsement carried a similar exclusion with respect "to bodily injury to * * * another employee of the *named insured* arising out of or in the course of his employment * * *." (Emphasis appears in the policy.)

Almost identical exclusions are found in the comprehensive automobile liability provisions of the policy.

Under the issues drawn in this litigation, and our applicable rules, we must first determine whether Jones was "another employee of the *named insured*." If he was, then clearly Hawkeye had no obligation to pay any amount because of his injury.

◼ We first turn to an interpretation of the contract to discover what the parties intended by the above-quoted language. We are permitted to consider evidence of the surrounding circumstances, the situation of the parties, and the objects they were striving to attain. Hamilton v. Wosepka, 261 Iowa 299, 305–314, 154 N.W.2d 164, 167–172 (1967).

◼ Where insurance contracts require interpretation, the courts will adopt the construction most favorable to the insured. Rich v. Dyna Technology, Inc., 204 N.W.2d 867, 872 (Iowa 1973). Such contracts should be interpreted from the viewpoint

of an ordinary person, not a specialist or expert. Qualls v. Farm Bureau Mutual Insurance Company, 184 N.W.2d 710, 712 (Iowa 1971); Bates v. United Security Insurance Company, 163 N.W.2d 390, 397 (Iowa 1968).

It is conceded the management and control of public utilities in Spencer were placed in the hands of a board of trustees by a 1942 election. See §§ 6144 through 6149, The Code, 1939 (now §§ 397.29 through 397.34, The Code, 1973). By statute this board is given all the power and authority conferred on waterworks trustees. Section 6149, The Code, 1939 (§ 397.-34, The Code, 1973). Thus the trustees had the power "to employ a superintendent and such other employees as may be necessary and proper for the * * * conduct of the business * * *." Section 6158, The Code, 1939 (§ 398.9, The Code, 1973). At all times pertinent to this litigation the board was empowered to grant "its employees" civil service rights. Section 398.-13, The Code.

While Utilities' revenues are deposited with the city treasurer, these funds are separate and distinct and may be paid out "only on the written order of the board * * * who shall have full and absolute control of the application and disbursement thereof for the purposes prescribed by law * * *." Section 6158, The Code, 1939 (§ 398.9, The Code, 1973).

The record discloses without controversy Mead and Roberts were hired as linemen by Utilities' manager, who directed their work. They were paid by warrants drawn on Utilities' funds. Utilities had its own employer's identification number and filed its own separate quarterly employer's tax returns and separate quarterly returns to the Iowa Public Employees' Retirement System. It had its own insurance program. On November 20, 1968 Utilities' workmen's compensation insurance was carried by Employers Mutual Casualty Company.

Jones was hired by the City, worked in the street department, and was paid by a warrant drawn on City funds. The City of Spencer had its own separate employer's identification number and filed its own returns for income tax, social security and Iowa public employees' retirement purposes. The City had a separate insurance program and on November 20, 1968 it was insured for both liability and workmen's compensation under a combination policy issued by Continental Western Mutual Insurance Company. That company paid Jones' workmen's compensation claim.

These facts are uncontested. The relationship of Mead and Roberts to Utilities satisfies all those tests utilized to determine whether an employer-employee situation exists. See McClure v. Union et al., Counties, 188 N.W.2d 283, 285 (Iowa 1971). The relationship of Jones to Utilities satisfies none of those factors. Had Jones negligently injured a passer-by on the day of this accident, Hawkeye undoubtedly would have denied his liability was covered as an employee-insured under its policy, and rightly so.

The statutes cited above clearly show a legislative intent to create a separate employer in Utilities. See State v. Downing, 261 Iowa 965, 971, 155 N.W.2d 517, 521 (1968). It is plain Utilities and the City of Spencer comprised two separate, distinct employing units. Hawkeye sold insurance coverage to one such unit (Utilities) as its "named insured." This was amended to cover the employees of the named insured. In each critical instance Hawkeye's policy printed the words "named insured" in darker print, as though to limit its coverage to Utilities, its employees, and none other.

Interpreting the policy under these circumstances, we hold the parties to the insuring contract intended to insure the liability of Utilities and its employees, and not the employees of the City of Spencer, a separate employing unit. It follows Jones was not "another employee" of Utilities, nor a co-employee of Mead and Roberts. Hawkeye's defense based upon its policy exclusion is without merit.

III. *Was Utilities legally obligated to defend and save harmless its employees under the provisions of § 613A.8, The Code?*

In division II we have concluded Jones was not within the fellow-employee policy exclusion relied on by Hawkeye when it declined to defend Roberts and Mead. We also determined Roberts and Mead were each an "insured" under the policy. This situation is somewhat similar to that not infrequently encountered in which employees are sued even though the municipal employer is not made a party because of plaintiff's failure to give a § 613A.5 notice or because of some other factors. See Crabb v. Payton, 192 N.W.2d 761, 762 (Iowa 1971); Vermeer v. Sneller, 190 N. W.2d 389, 392 (Iowa 1971).

But Hawkeye claims, and trial court found, Utilities had no duty to defend and save harmless its employees under the provisions of § 613A.8, The Code. Therefore, Hawkeye asserts, Utilities was under no obligation to make payment for the covenant not to sue and cannot recover in this action.

■ This facet of the litigation brings us to a construction of the meaning and intent of certain sections of chapter 613A applicable in this unusual factual setting. Certainly these statutes, in force and effect when Hawkeye issued its policy on July 24, 1968, are to be read into the insurance contract. Williamson v. Massachusetts Bonding & Insurance Co., 142 Conn. 573, 576–577, 116 A.2d 169, 171 (1955); 43 Am.Jur. 2d, Insurance § 289, pp. 350–51; 44 C.J.S. Insurance § 302, pp. 1214–1220; see Bates v. Nelson, 240 Iowa 926, 932, 38 N.W.2d 631, 634 (1949).

Section 613A.7 first empowers the "governing body of any municipality" to purchase liability insurance for itself *or* its officers, employees and agents. It then separately provides:

"Any independent or autonomous board or commission in the municipality having authority to disburse funds for a particu-

lar municipal function without approval of the governing body may similarly procure liability insurance within the field of its operation. * * *"

Section 613A.8 similarly bifurcates, first requiring the "governing body" to defend, hold harmless and indemnify its officers and employees, and then imposing a similar duty on another body:

"Any independent or autonomous board or commission of a municipality having authority to disburse funds for a particular municipal function without approval of the governing body shall similarly defend, save harmless and indemnify its officers and employees against such tort claims or demands. * * *"

Hawkeye is in the anomalous position of claiming that although it sold Utilities insurance to cover its employees as a board or commission authorized to procure such insurance by virtue of § 613A.7, Utilities was not such a board or commission as was obliged to defend, hold harmless and indemnify its employees under the requirement of § 613A.8.

Specifically, Hawkeye argues because Utilities had no statutory power to sue or be sued, it was not an "independent or autonomous board or commission" within the language of § 613A.8, citing several of our decisions, none of which defines the above clause or presents facts analogous to those before us. Board of Park Com'rs v. City of Marshalltown, 244 Iowa 844, 58 N.W.2d 394 (1953); Park Board v. City, 228 Iowa 904, 290 N.W. 680 (1940); Miller Grocery Co. v. City of Des Moines, 195 Iowa 1310, 192 N.W. 306 (1923).

We are not confronted with a controversy between a municipality and one of its boards or commissions as was the court in two of the cases last cited. As a matter of first impression, we must determine what the legislature intended by the words it used in these statutes, keeping in view the overall purpose of chapter 613A to abrogate many aspects of governmental immu-

nity and to permit the purchase of liability insurance.

Clearly, it is no answer to say the Utilities is part of the municipality and is therefore not "independent or autonomous." The board or commission authorized to procure insurance under § 613A.7 must be "in the municipality." The board or commission directed to defend, hold harmless and indemnify its employees in § 613A.8 must be "of the municipality."

Other statutory language, quoted above, specifically bears on legislative intent. The board or commission intended by the legislature must be one "having authority to disburse funds for a particular municipal function without the approval of the governing body." Sections 613A.7, 613A.8, The Code. It is one which has its own "officers and employees." Section 613A.8, The Code. Section 613A.7 indicates such a board or commission would have a "field of * * * operation."

Here the citizens of Spencer, by ballot, placed the management and operation of its utilities in a board of trustees. Sections 6146, The Code, 1939 (§ 397.31, The Code, 1973), § 6157, The Code, 1939 (§ 398.8, The Code, 1973). That board not only has a statutory "field of * * * operation"; it has its own employees, as we have held in division II. It has "full and absolute control" of utility revenues, without the approval of the city council. Section 398.9, The Code.

Liability insurance, as well as workmen's compensation insurance, for Utilities' employees is an expense the City and the board could properly determine to be a utility operating expense to be procured by the board and paid by utility revenues. Other boards and commissions, not charged with a distinct field of operations nor permitted to disburse funds without city approval would not be "independent and autonomous" as that clause appears in sections 613A.7 and 613A.8, and could not commit city funds for insurance for their activities. We need not determine here whether those two statutes would require the "board or commission" in all situations to be an entity which can sue or be sued.

The plain language of § 613A.7 permits *either* a "governing body" *or* a "board or commission" to insure the liability of itself *or* its employees, or both. Assuming Utilities to be immune from suit would not mean it could not or should not insure the liability of its employees, and, in the event of such suit against them, defend them and hold them harmless. If we assume a city council were to compromise the liability of Utilities' employees there is no statutory mechanism by which the council could charge the amounts paid to the field of utility operations. On the other hand, the utility board can adjust its revenues to procure insurance or defend and save harmless its employees.

■ We are persuaded the legislative intent of these statutes was to permit just such a board as Utilities to secure insurance insuring the liability of its employees and to pay for it as a part of the expense of its field of operations. We are likewise convinced the board has the duty under § 613A.8 to defend, hold harmless and indemnify its employees from the tort claims described in that statute.

■ Nor do we believe an insurer who has sold liability insurance for the personnel and vehicles of a board under § 613A.7 should be heard to deny the obligation of the same board to defend, hold harmless and indemnify under the provisions of § 613A.8. The language describing the board in both instances is almost identical.

We do not intend by anything said here to suggest the City may not be liable for the acts of employees of a board of utility trustees. All such boards and commissions "of a municipality" may well perform municipal functions as agents of the municipality. Tort-wise, the old proprietary-governmental function dichotomy has been abolished. Section 613A.2, The Code. Neither are we required to decide whether

Utilities was a suable entity under chapter 613A.

We simply hold this insurer cannot maintain the position that Utilities, under these circumstances, had no § 613A.8 obligation to defend and hold harmless the employees it insured as permitted by § 613A.7. In short, this board satisfies the "independent or autonomous" test of those statutes.

The court has considered the other arguments advanced by Hawkeye to support trial court's decision, and finds them to be without merit. We therefore conclude this case must be reversed.

Reversed.