**Lynette Fitzgerald MILLER, Respondent,**

v.

**Mark SHUGART, et al., Respondents,**

and

**Milbank Mutual Insurance Company, Appellant.**

**No. 81–533.**

Supreme Court of Minnesota.

March 12, 1982.

Wm. J. Nierengarten, Austin, for appellant.

Peterson & Thompson, Winona, for Miller.

Hoversten, Strom, Johnson & Rysavy, Austin, for Shugart, et al.

SIMONETT, Justice.

While Milbank Mutual Insurance Company was litigating whether it had coverage for both the insured car owner and the driver, the insured owner and the driver settled with the injured plaintiff and confessed judgment for a stipulated sum. After the coverage question was decided adversely to Milbank, plaintiff commenced a garnishment action against Milbank to collect on the judgment. Milbank appeals from an order in the garnishment proceeding granting plaintiff summary judgment to collect from Milbank on defendants' confessed judgment to the extent of the policy limits plus interest. Finding that Milbank must indemnify, we affirm plaintiff's recovery of the policy limits but reverse the ruling on interest.

Plaintiff Lynette Miller was injured in an automobile accident on June 19, 1976, when a car owned by defendant Barbara Locoshonas and driven by defendant Mark Shugart,

in which Lynette was a passenger, struck a tree. Locoshonas had an auto liability policy with Milbank. Milbank, however, contended Shugart, the driver of the car, was not an agent of the owner and thus not covered under the policy. To determine this coverage question, Milbank, shortly after the accident, commenced a declaratory judgment action. Milbank provided separate counsel at its expense to represent the insured and the driver.

On January 8, 1979, judgment was entered in the declaratory judgment action adjudging that Milbank's policy afforded coverage to both Locoshonas and Shugart. On January 31, 1979, plaintiff Lynette Miller commenced her personal injury action against Locoshonas and Shugart. In April 1979 Milbank appealed the declaratory judgment decision to this court, and in April 1980 we summarily affirmed.

Twice while the appeal was pending, counsel for Locoshonas and Shugart advised Milbank they were negotiating a settlement with plaintiff's attorney and invited Milbank to participate in the negotiations. Milbank refused, pointing out it could not do so while the coverage question was unresolved.

In September 1979, plaintiff and the two defendants signed a stipulation for settlement of plaintiff's claims in which defendants confessed judgment in the amount of $100,000, which was twice the limit of Milbank's policy. The stipulated judgment further provided that it could be collected only from proceeds of any applicable insurance with no personal liability to defendants. Milbank was advised of the stipulation. Judgment on the stipulation was entered on November 15, 1979.

In May 1980, following this court's summary affirmance on the coverage issue, plaintiff Miller served a garnishment summons on Milbank. Milbank interposed an answer to the supplemental complaint setting out the history of the litigation and alleging that the confession of judgment was in violation of its policy and that Milbank was thus not bound by the judgment. Plaintiff then moved for summary judg-

ment in her favor for $50,000, the policy limits, plus interest and costs. Milbank countered with its own motion for summary judgment, claiming defendants had breached the cooperation clause of the policy, that garnishment did not lie, and that the confessed judgment was invalid. The trial court granted plaintiff's motion, adjudging plaintiff was entitled to recover the $50,000 limits plus interest on $100,000.

Three main issues present themselves: (1) Does garnishment lie, (2) may Milbank avoid responsibility for the confessed judgment, and (3) if Milbank is bound by the judgment, must it also pay interest on the entire $100,000?

## I.

Milbank says there has never been a trial on the merits, that the purported judgment, insofar as it is concerned, is still an "unliquidated tort claim," and that, consequently, the sum due plaintiff is not "due absolutely," and so garnishment does not lie. Minn.Stat. § 571.43 (1980). Milbank overlooks, however, that as between plaintiff and the defendants the tort claim has been liquidated and reduced to a judgment. So long as this has occurred, the basis for garnishment exists. *Northwestern National Bank of Bloomington-Richfield v. Hilton & Associates*, 271 Minn. 564, 136 N.W.2d 646 (1965).

What Milbank is really saying is that the judgment does not liquidate the claim because it obligates the defendants to pay nothing. While it is true that defendants need not pay anything, it is also true that the judgment effectively liquidates defendants' personal liability. We hold, therefore, that plaintiff may seek to collect on that judgment in a garnishment proceeding against the insurer.

## II.

The next question is whether the judgment stipulated to by the plaintiff and the defendant insureds is the kind of liability the insurer has agreed under its policy to pay. This involves an inquiry into whether

the judgment is the product of fraud or collusion perpetrated on the insurer and whether the judgment reflects a reasonable and prudent settlement.

A. We first must deal with a threshold issue. Milbank argues the indemnity agreement of its policy has been voided because the insureds breached their duty under the policy to cooperate.[1] We disagree.

Under the auto liability policy, Milbank has a duty to defend and indemnify its insureds, and the insureds have a reciprocal duty to cooperate with their insurer in the management of the claim. Plaintiff contends that defendants were relieved from their duty to cooperate because Milbank breached its duty to defend. We would put the issue differently. Milbank has never abandoned its insureds nor, by seeking a determination of its coverage, has it repudiated its policy obligations.[2] Milbank had a right to determine if its policy afforded coverage for the accident claim, and here Milbank did exactly as we suggested in *Prahm v. Rupp Construction Co.*, 277 N.W.2d 389, 391 (1979), where we said a conflict of interest might be avoided by bringing a declaratory judgment action on the coverage issue prior to trial. This is the route Milbank followed, appropriately providing another set of attorneys to defend the insureds in the declaratory judgment action.[3]

On the other hand, while Milbank did not abandon its insureds neither did it accept responsibility for the insureds' liability exposure. What we have, then, is a question of how should the respective rights and duties of the parties to an insurance contract be enforced during the time period that application of the insurance contract itself is being questioned. Viewed in this context, Milbank's position, really, is that it has a superior right to have the coverage question resolved *before* the plaintiff's personal injury action is disposed of either by trial or settlement. It is unlikely plaintiff could have forced defendants to trial before the coverage issue was decided. Put this way, the question becomes: Did the insureds breach their duty to cooperate by not waiting to settle until after the policy coverage had been decided? In our view, the insureds did not have to wait and, therefore, did not breach their duty to cooperate.

While the defendant insureds have a duty to cooperate with the insurer, they also have a right to protect themselves against plaintiff's claim. The attorneys hired by Milbank to represent them owe their allegiance to their clients, the insureds, to best represent their interests.[4] If, as here, the insureds are offered a settle-

1. The insurance policy provides in pertinent part: "The insured shall cooperate with the company and, upon the company's request, assist in making settlements * * *. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid for others at the time of the accident."
 A breach of the cooperation clause must be a substantial and material breach which prejudices the insurer. *Juvland v. Plaisance*, 255 Minn. 262, 96 N.W.2d 537 (1959).

2. Thus this case is unlike *Coblentz v. American Surety Company of New York*, 416 F.2d 1059 (5th Cir. 1969), on which plaintiff relies. In *Coblentz* the insurer concluded it had no coverage and refused to defend or to seek a judicial decision on coverage, leaving the insured "to his own resources."

3. Not every coverage question is the same, and the procedures to use in resolving the question may vary. It is of first importance to proceed in a manner to avoid conflicts of interest and prejudice to the parties. It is also important to consider judicial economy, the need to save court time and litigation expense. In this case another possible option might have been to try plaintiff's personal injury suit with Milbank providing separate counsel for its insured car owner (for whom apparently no coverage question existed) and for the driver, thus leaving the parties to litigate the permissive use issue in the personal injury action.

4. Milbank cannot complain that the lawyers it hired to represent the insureds were not working in the best interests of Milbank. "A lawyer shall not permit a person who recommends, employs or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services." Code of Professional Responsibility, DR 5–107(B). *See Polk County v. Dodson*, —— U.S. ——, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981).

ment that effectively relieves them of any personal liability, at a time when their insurance coverage is in doubt, surely it cannot be said that it is not in their best interest to accept the offer. Nor, do we think, can the insurer who is disputing coverage compel the insureds to forego a settlement which is in their best interests.

On the facts of this case we hold, therefore, that the insureds did not breach their duty to cooperate with the insurer, which was then contesting coverage, by settling directly with the plaintiff.

B. The next issue is whether Milbank may avoid the stipulated judgment on the grounds of fraud or collusion. We hold as a matter of law that the judgment was not obtained by fraud or collusion.

We start with the general proposition that a money judgment confessed to by an insured is not binding on the insurer if obtained through fraud or collusion. *Coblentz v. American Security Co. of New York*, 416 F.2d 1059 (5th Cir. 1969); *cf. Spencer v. Hawkeye Security Ins. Co.*, 216 N.W.2d 406 (Iowa 1974). In this case, however, Milbank has not made any showing of fraud or collusion. In its answer to the supplemental complaint, Milbank has neither pleaded fraud or collusion nor pleaded facts for such a defense. *See* Rules of Civil Procedure, Rule 9.02 ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.") Neither, in opposing plaintiff's motion for summary judgment, has Milbank submitted affidavits or other evidence to make out any fact issue of fraud or collusion. Rules of Civil Procedure, Rule 56.05.

As we understand Milbank's argument, it is that the fraud and collusion consist of the defendant insureds settling the claims over Milbank's objections and contrary to the insurer's best interests, and in confessing judgment for a sum twice the amount of the policy limits. This conduct,

however, need be neither fraudulent nor collusive. As we have just held, the defendant insureds had a right to make a settlement relieving them of liability. They also advised Milbank of what they were doing. Moreover, they waited to settle until after the district court had found coverage to exist. We see nothing improper in defendants' conduct. Nor is there anything wrong with the insureds' confessing judgment in an amount double the policy limits, since plaintiff, in her motion for summary judgment, has recognized Milbank's coverage is only $50,000 and seeks to recover no more than that sum from Milbank.[5] The interest question will be addressed separately.

This is not to say that Milbank's position is enviable. As the trial court observed, it had "serious doubts about the propriety of the procedure whereby the insurer is placed in a 'no-win' situation as was done here." If the insurer ignores the "invitation" to participate in the settlement negotiations, it may run the risk of being required to pay, even within its policy limits, an inflated judgment. On the other hand, if the insurer decides to participate in the settlement discussions, ordinarily it can hardly do so meaningfully without abandoning its policy defense. Nevertheless, it seems to us, if a risk is to be borne, it is better to have the insurer who makes the decision to contest coverage bear the risk. Of course, the insurer escapes the risk if it should be successful on the coverage issue, and, in that event, it is plaintiff who loses.

We hold, as a matter of law, on the showing made on plaintiff's motion for summary judgment, that the stipulated judgment against the defendant insureds was not obtained by fraud or collusion.

C. Although having found that the stipulated judgment is untainted by fraud or collusion, our inquiry is not at an end. It seems to us there must also be a

---

5. If plaintiff had sought to recover more than the policy limits from Milbank, an issue of fraud or collusion might present itself. Nor, on the other hand, have the defendant insureds any claim for a bad-faith excess claim against Milbank, since the insureds are not personally harmed by Milbank's failure to pay the amount of the judgment in excess of the policy limits.

showing that the settlement on which the stipulated judgment is based was reasonable and prudent.

The settlement stipulation recites that defendants confess judgment in favor of plaintiff in the amount of $100,000 "upon the condition that plaintiff agree that her judgment may be satisfied only from liability insurance policies in force at the time * * and that this judgment is not satisfiable nor may it be a lien upon any other assets of defendants * * *." Defendants agreed judgment could be entered *ex parte* adjudging the driver Shugart negligent although the parties further agreed, somewhat inconsistently, that the stipulation "does not constitute an admission by either defendant of his or her negligence," and it was also agreed the stipulation and judgment could not be used as an admission by the defendants in any other lawsuit.

▇▇▇▇ Plainly, the "judgment" does not purport to be an adjudication on the merits; it only reflects the settlement agreement. It is also evident that, in arriving at the settlement terms, the defendants would have been quite willing to agree to anything as long as plaintiff promised them full immunity. The effect of the settlement was to substitute the claimant for the insureds in a claim against the insurer. Thus on this appeal we see only the plaintiff claimant and the defendants' insurer in dispute, with the insureds taking a passive, disinterested role. Moreover, it is a misnomer for the parties to call plaintiff's judgment a "confessed" judgment. If this were truly a confessed judgment or even a default judgment, it is doubtful that it could

stand.[6] It seems more accurate to refer to the judgment as a judgment on a stipulation.

▇▇▇▇ In these circumstances, while the judgment is binding and valid as between the stipulating parties, it is not conclusive on the insurer. The burden of proof is on the claimant, the plaintiff judgment creditor, to show that the settlement is reasonable and prudent. The test as to whether the settlement is reasonable and prudent is what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim. This involves a consideration of the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial. This can be compared with the somewhat analogous situation in which a joint tortfeasor seeking consideration from a cotortfeasor must prove the settlement made was reasonable. *See, e.g., Samuelson v. Chicago, Rock Island & Pacific R. Co.,* 287 Minn. 264, 178 N.W.2d 620 (1970).

It may be instructive to point out how this case differs from *Butler Brothers v. American Fidelity Co.,* 120 Minn. 157, 139 N.W. 355 (1913). In *Butler* we held that a stipulated judgment, while not conclusive on the insurer, was presumptively so, and that the burden was on the insurer to show the settlement was unreasonable. In *Butler,* however, the insured entered into a settlement with the plaintiff in the course of a "real trial" while defending itself after being abandoned by its insurer. Thus the *Butler* settlement had quite different *bona fides* than the settlement made here. Here we think it appropriate, and so hold, that

---

**6.** Strictly speaking, a confessed judgment applies to debts, not unliquidated tort claims, and, to be valid, it must comply with the provisions of Minn.Stat. § 548.22 (1980), which requires a verified statement by the defendant debtor setting out facts concisely showing the sum confessed is justly due or to become due. None of this was, or could have been, done here. A confessed judgment, it is worth noting, is valid between the parties but voidable as to third parties, such as other creditors, entitled to attack it. *Hackney v. Wolloston,* 73 Minn. 114, 75 N.W. 1037 (1878).

Nor did plaintiff and defendants follow the procedures for a default judgment. In this case plaintiff Miller simply had judgment entered *ex parte* on her stipulation. If defendants had permitted a default judgment to be entered against them, the court would have had to "ascertain, by a reference or otherwise, the amount to which the plaintiff is entitled * * *." Rules of Civil Procedure, Rule 55.01, subd. 2. Here, apparently, the only evidence presented at the court hearing as to whether the plaintiff's claim was worth $100,000 or, for that matter, $50,000 was the settlement stipulation itself.

the burden of proving reasonableness is on the plaintiff claimant.

 This leaves us with the question of what to do in this case. The trial court granted plaintiff summary judgment against Milbank for its policy limits of $50,000. The question is whether the record shows, as a matter of law, that the stipulated judgment, to the extent of $50,000, was reasonable and prudent. Not much proof was submitted to the trial court on this issue at the hearing on the motions for summary judgment. Nonetheless, it does appear, without dispute, that this was a one-car accident, with the plaintiff as passenger, in which the car left the road and hit a tree. As to damages, the settlement stipulation recites, and it is undisputed by Milbank, that plaintiff suffered "severe and disfiguring personal injuries," that no-fault benefits in excess of $20,000 were paid and that the no-fault benefits were likely to total $35,000 or more. The trial court states in its memo that Mr. Forsythe, retained by Milbank to represent the insureds, had reviewed the liability and damage aspects of the claim and had concluded "there was a substantial likelihood that ultimately judgment would be entered against his clients * * * for more than any possible insurance coverage * * *." On this showing, not disputed, we conclude the trial court did not err in granting summary judgment in favor of plaintiff and against Milbank to the extent of $50,000.

### III.

 The trial court also ordered that Milbank should pay interest on $100,000 from and after November 15, 1979, the date of the confessed judgment. As to this ruling on interest, we reverse.

Milbank's policy provides "[t]he company will pay * * * all interest on the entire amount of any judgment therein which accrues after the entry of judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon."

 Plaintiff's stipulated judgment was not conclusive on the insurer until the insurer had an opportunity to litigate the issues of whether it was bound by the judgment.[7] It was not until the garnishment proceeding of March 25, 1981, that a judicial determination was made that Milbank was liable for $50,000 on the stipulated judgment. Milbank does not have to pay interest on a sum neither it nor its insureds owe.

We hold that the trial court's order for summary judgment in favor of plaintiff and against Milbank in the amount of $50,000 is affirmed; that Milbank is liable for interest accruing on its $50,000 judgment entered in the garnishment proceeding from March 25, 1981; and that the portion of the judgment requiring Milbank to pay interest on the remaining $50,000 of the stipulated judgment is reversed.

Affirmed in part and reversed in part.

KELLEY, J., took no part in the consideration or decision of this case.

7. The "no action" clause in Milbank's policy reads: "No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor shall an action lie under the liability coverage *until the amount of the insured's obligation to pay shall have been fully determined either by judgment against the insured after actual trial or by written agreement by the insured, the claimant and the company.*" (Emphasis added.)

This "no action" clause does not prevent the insureds from entering into the settlement stipulation with plaintiff, *see Butler Brothers v. American Fidelity Co.,* 120 Minn. 157, 139 N.W. 355 (1913). Since the stipulated judgment did not require the insured to pay anything, it was not until the summary judgment of March 25, 1981, that anyone's liability to pay was determined and only then would interest start running.