BOB USELDINGER & SONS, INC., et al.,
Judgment Creditors, Respondents (C9–91–2065), Judgment Creditors (C9–91–2096),

Honek Brothers Potato Company, et al.,
Judgment Creditors, Respondents (C9–91–2096), Judgment Creditors (C9–91–2065),

v.

Gust HANGSLEBEN, et al.,
Judgment Debtors,

Insurance Company of North America,
Garnishee, Petitioner, Appellant,

State Farm Fire & Casualty Company,
Garnishee, Petitioner, Appellant (C9–91–2065), Garnishee/Defendant (C9–91–2096),

St. Paul Fire & Marine Insurance Company, Garnishee, Petitioner, Appellant.

Nos. C9–91–2065, C9–91–2096.

Supreme Court of Minnesota.

Aug. 27, 1993.

Rehearing Denied Oct. 7, 1993.

Gordon Myerchin, David M. Box, Grand Forks, ND, Timothy J. McLarnan, Moorhead, William M. Hart, Laura J. Hanson, Charles E. Spevacek, Kay Nord Hunt, Minneapolis, for appellant.

Patrick R. Morley, Robert M. Light, Grand Forks, ND, Patrick W. Fisher, Michael F. Daley, Grand Forks, ND, for respondents.

**TOMLJANOVICH, Justice.**

In these cases, we are asked to construe several insurance policies issued by petitioners to determine if they provide coverage for claims brought by purchasers of seed potatoes whose crops were contaminated with bacterial ring rot.[1] The trial court ruled that

---

1. The policies and insureds in these cases are as follows:

| Company | Policy No. | Insured | Type |
| --- | --- | --- | --- |
| Insurance Company of North America | CFP 12 80 66 | Gust Hangsleben | Commercial General Liability |
| State Farm Fire and Casualty Company | 93 09 1438 8 | Paquin Potato Company Richard A. and David Paquin | General Liability |
| State Farm Fire and Casualty Company | 93 09 6451 0 | Paquin Potato Company | Commercial Umbrella |

certain of the policies did not provide coverage. The court of appeals disagreed and reversed. 483 N.W.2d 495 (Minn.App.1992). We agree with the trial court's ruling and reverse the court of appeals.

We also must address whether the *Miller–Shugart*[2] agreements entered into between Richard and David Paquin ("the Paquins"), suppliers of seed potatoes, and plaintiffs Bob Useldinger & Sons, Inc. and Greg Useldinger, Inc. are enforceable. The trial court ruled that they were improperly entered into because the insurer of the Paquins had not denied coverage. We believe that in this situation it was proper for the Paquins to enter into *Miller–Shugart* agreements with the plaintiffs. The trial court also ruled that these *Miller–Shugart* agreements were defective because the parties failed to allocate the damages among the various defendants. We agree with the trial court that the failure to allocate damages among the defendants voids the *Miller–Shugart* agreements. Thus, we reverse in part, vacate the judgments as to the *Miller–Shugart* agreements, and remand for further proceedings consistent with this opinion.

## FACTS

Bob Useldinger & Sons, Inc. and Greg Useldinger, Inc. ("the Useldingers") contracted with Paquin Potato Company, operated by the Paquins, for seed potatoes for the crop years 1981 through 1984. Paquin Potato Company supplied the Useldingers with seed potatoes grown by P & H Farms, a partnership founded by the Paquins and Hangsleben. The Paquins were insured by State Farm Fire and Casualty Company ("State Farm"). Gust Hangsleben was insured by Insurance Company of North America ("INA") and St. Paul Fire & Marine Insurance Company ("St. Paul").[3]

In 1983, the Useldingers discovered that seed potatoes supplied by the Paquins were contaminated with a disease known as bacterial ring rot. The Useldingers were able to salvage some of their potato crop, but most of the crop was destroyed.

In 1982 and 1983, P & H Farms sold seed potatoes to Honek Brothers Potato Company, Mack Farms and Tri–Mack Potatoes, Inc. This seed was also infected with bacterial ring rot. The result was similar to the Useldingers' experience.

The seed potato buyers subsequently commenced actions against the suppliers, alleging breaches of warranties, negligence and strict liability in tort.[4] The suits were consolidated for trial purposes.

In June 1987, P & H Farms, Paquin Potato Company, and the partners of P & H Farms jointly stipulated to the entry of judgment in favor of the Useldingers pursuant to a *Miller–Shugart* settlement. On May 24, 1988, the trial court entered judgment nunc

| Company | Policy No. | Insured | Type |
|---|---|---|---|
| State Farm Fire and Casualty Company | 23 18 1202 7 | Richard A. Paquin | Personal Liability Umbrella |
| State Farm Fire and Casualty Company | 23 18 0652 0 | David Paquin | Personal Liability Umbrella |
| St. Paul Fire and and Marine Insurance Company | 263XA2115 | Gust Hangsleben | Personal Liability Umbrella |

**2.** 316 N.W.2d 729 (Minn.1982). *Miller v. Shugart* provided that in some circumstances when an insurer does not wholeheartedly defend the insured by claiming no insurance coverage, the insured may enter into a settlement agreement with the claimant subject to the condition that the claimant will only sue for the insurance proceeds to enforce the settlement.

**3.** The policies and insureds are listed in note 1, *supra.*

**4.** This court, in related litigation, limited the available theories of recovery to the provisions of the Uniform Commercial Code, Minn.Stat. §§ 336.2–701 to 336.2–725 (1982). *Hapka v. Paquin Farms*, 458 N.W.2d 683 (Minn.1990).

pro tunc in conformity with the agreement. The judgment states that plaintiff Greg Useldinger, Inc. claimed an actual loss of $187,783.25 but that the parties had agreed to settle the claim for $128,652. The parties stipulated that Greg Useldinger, Inc. would look to the personal assets of the defendants for only $28,125 of the judgment amount. Further, Greg Useldinger, Inc. agreed that it could recover no more than 50 percent of the $28,125 from the assets of Hangsleben. Greg Useldinger, Inc. agreed that it would seek to recover the remainder of the judgment only against the insurance proceeds.

A similar stipulation was entered on behalf of plaintiff Bob Useldinger and Sons, Inc. This stipulation stated that Bob Useldinger and Sons, Inc. claimed $128,027.50, but that the parties had agreed to settle the dispute for $87,000. This agreement stated that Bob Useldinger and Sons, Inc. would only look to the defendants for $22,093 of the judgment and also stipulated that only half of this amount could be recovered against Hangsleben. As in the other stipulated agreement, Bob Useldinger and Sons agreed that it would seek enforcement of the remainder of the judgment only against the insurance proceeds.

In October 1987, shortly before trial, Gust Hangsleben entered into a *Miller–Shugart* agreement on his individual liability with plaintiffs Honek Brothers Potato Company, Robert Honek, James Honek, Tri–Mack Potato, Inc., and Mack Farms. The agreement stipulated that the claimants were awarded—totally and in the aggregate—$650,000. The judgment stipulated that this was the total sum which could be awarded against Hangsleben regardless of how the plaintiffs apportioned the amounts among themselves. Further, the parties stipulated that the judgment could only be collected from the insurance proceeds. Judgment was entered pursuant to this stipulated settlement on March 3, 1989. Claims against other suppliers were subsequently determined at trial.

The plaintiffs, now judgment creditors, initiated garnishment actions against the insurers to enforce the *Miller–Shugart* agreements. The trial court granted summary judgment for the insurers. It gave several reasons for its ruling. It ruled that there was no coverage under the State Farm general liability and commercial umbrella policies issued to the Paquins, nor any coverage under the policies issued to Gust Hangsleben by INA and St. Paul. The trial court additionally ruled that the Paquins had violated the personal umbrella policies they had with State Farm by entering into *Miller–Shugart* agreements, and that these *Miller–Shugart* agreements were invalid because they did not allocate damages among the various defendants, but rather held all of several defendants jointly and severally liable for one lump sum.

The judgment creditors appealed to the court of appeals. It reversed on all counts, holding that there was coverage under all of the policies and that the *Miller–Shugart* agreements were valid. It also ruled that the trial court's granting of summary judgment to INA and St. Paul, the insurers of Hangsleben, was improper because, although the policies did not explicitly name the P & H Farms' land on the declarations page, there was enough evidence to support the theory that Hangsleben had spread ring rot from his land to the land of the partnership, P & H Farms, leaving open the issue of coverage.

## I.

■ First we must decide whether the State Farm comprehensive general liability and commercial umbrella policies issued to the Paquins provide coverage.[5] These policies contain the following exclusion:

> In consideration for the premium charged, no coverage is provided for claims of consequential loss or damages because of but not limited to:
>
> A. Failure of seed sold by the insured to conform to the variety or quality of speci-

**5.** State Farm also issued the two personal liability umbrella policies to Richard and David Paquin. The trial court ruled that the *Miller–Shugart* agreements entered into as to these policies were improper and voided the policies. Thus, the coverage issues were never reached and are not on appeal here.

fied (sic) or to be suitable for the purpose specified.

B. Failure of seed to conform to the variety or quality specified when sold by the insured in unopened packages, received by the insured from a supplier.

C. Germination quality of seed.

State Farm argues that the exclusion precludes coverage because the claims of the judgment debtors arose out of the failure of the seed potatoes to conform to the quality specified. The plaintiffs-judgment creditors argue, and the court of appeals agreed, that "quality specified" as used in this context, means a particular "grade" of seed and that the exclusion does not include seed which is contaminated by disease. The court of appeals thus reasoned that because the claim in this case was not for breach of a specific warranty, but for a general failure of the seed potatoes to perform as expected, the exclusion did not apply and the two policies provided coverage.

 The insurer bears the burden of proving that a given exclusion applies. *Caledonia Community Hosp. v. St. Paul Fire & Marine Ins. Co.*, 307 Minn. 352, 354, 239 N.W.2d 768, 770 (1976). Exclusions are to be strictly interpreted against the insurer and an insurer denying coverage because of an exclusion bears the burden of proof. *Milwaukee Mutual Ins. Co. v. City of Minneapolis*, 307 Minn. 301, 307, 239 N.W.2d 472, 475 (1976).

The use of the term "quality *specified*" might require that a specific guarantee of quality has been made by the seller as to the seed for the exclusion to apply. State Farm, however, argues that the exclusion applies because the plaintiffs claims are essentially warranty claims. We agree with State Farm. Under *Hapka v. Paquin Farms*, 458 N.W.2d 683 (Minn.1990), any claim that the judgment creditors have is a warranty claim. The potatoes were to be grown to the specifications of a potato chip producer, and the seed did not fulfill this purpose or expecta-

tion. Therefore, the seed failed to conform to the "quality specified." Neither the State Farm general liability nor the comprehensive umbrella policy provides coverage.

The Useldingers also contend that the "reasonable expectations doctrine" should provide coverage on these facts. The Useldingers argue that the doctrine is satisfied because the Paquins requested coverage for diseased seed and were assured that this coverage was included. They also point to the fact that they paid a $489 premium for property damage, $451 of which was charged to "Seed Merchants" coverage.[6] We believe that this is not an appropriate case to apply the doctrine. Here the purchasers of the insurance were experienced business people, and there is nothing in the language of the policies that would raise a reasonable expectation of coverage.

## II.

 Next we must decide whether the INA Farmers Comprehensive Personal Liability policy issued to Hangsleben provides coverage for damages caused by potatoes sold by P & H Farms. The relevant portion reads:

This coverage does not apply:

(a) To bodily injury or property damage arising out of any act or omission in connection with premises (other than the insured premises) owned, rented, or controlled by any insured.

The policy defines "insured premises" to mean:

all residence premises, all premises which the named insured or his spouse owns, rents, or operates as a farm, * * *.

The P & H Farms property, in which Hangsleben is a partner, is not listed on the declarations page. Because it is not listed, the parties dispute whether it is covered by this exclusion. In the past, this court has given weight to the declarations page. *See Arndt v. American Family Ins. Co.*, 394

---

6. The Useldingers also claim that the Paquins had requested coverage precisely for the types of claims made in these lawsuits. State Farm asserts that such a claim should have been brought against the agent. In any event, the parties have not argued and barely raised this issue. Furthermore it more properly seems to fall within the reasonable expectations doctrine discussed above.

N.W.2d 791 (Minn.1986). In *Arndt*, this court had to construe a policy which covered 127.6 acres of farm property although the farm actually consisted of 210 acres of land and an additional 60 acres of rented land. An accident happened on land not listed in the insurance policy. We ruled that there was no coverage for the accident because none of the provisions of the policy encompassed the accident on the unlisted land. We noted

> Although the result of this decision is harsh, it appears that the result is due mostly to the defendant's lack of diligence. * * * Defendant could have made the [uninsured] property part of the insured premises by having the property listed as added premises. Defendant also could have insured the * * * premises under the "Supplementary Coverages" provision of the policy by notifying American of the * * * property within 30 days of acquiring it and paying any added premiums. Instead, the [defendant farmowners] chose to insure only the 127.6 acres of property in Abbotsville, even though the property encompassed 270 acres.

*Arndt*, 394 N.W.2d at 795.

In the present case, INA required a listing of all farm land and the insured did on several occasions add additional land to the declarations. This practice of the parties evinces the parties' intent that the covered land would be listed. *See Waseca Mutual Ins. Co. v. Noska*, 331 N.W.2d 917, 926 (Minn.1983) (in insurance contracts, as with other contracts, the parties' minds must meet as to terms). Thus we believe that as a matter of law the policy does not cover the unlisted land.

■ The court of appeals ruled that summary judgment for INA was inappropriate because Hangsleben might have spread the ring rot himself from his land to that of P & H Farms by use of contaminated machinery. We believe the court of appeals misapplied the summary judgment standard. Summary judgment is not to be avoided simply because there is some metaphysical doubt as to a factual issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 at 247–50, 106 S.Ct. 2505 at 2509–11, 91 L.Ed.2d 202

(1986). The nonmoving party must demonstrate that there is indeed a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Minn.R.Civ.P. 56.05. Insufficient evidence existed to demonstrate that Gust Hangsleben in his personal capacity spread the ring rot from his fields to those of P & H Farms. The judgment creditors argue that because Hangsleben hauled potatoes in his trucks, and once helped dig potatoes with his equipment, that this is enough to overcome summary judgment. However, even assuming that these few facts are true, this evidence is more speculative than probative. *See Hunt v. IBM Mid America Employees Federal Credit Union*, 384 N.W.2d 853, 855 (Minn.1986) (in opposing summary judgment, party may not rely on general statements of fact but must point to specific facts which create an issue for trial). Mere speculation, without some concrete evidence, is not enough to avoid summary judgment. Sometimes, of course, this evidence will be supplied by deposition testimony. But it must have some foundation other than mere conjecture. The trial court properly granted summary judgment.

■ The INA policy also contains a business pursuits exclusion which provides that the policy does not apply

> (b) To bodily injury or property damage arising out of (1) business pursuits of any insured except (i) activities therein which are ordinarily incident to non-business pursuits, and (ii) *farming* or (2) the rendering of, or failing [sic] to render professional services.

Hangsleben was an investor in P & H farms. This court has held that unambiguous language in insurance policies, as in other contracts, must be given its plain and ordinary meaning. *State Farm Ins. Co. v. Seefeld*, 481 N.W.2d 62, 64 (Minn.1992). The court of appeals essentially held that the ordinary definition of farming means to "invest in a farming enterprise."

The dictionary defines "farming" as the practice of agriculture and "agriculture" as

> 1. a: the science or art of cultivating the soil, harvesting crops, and raising live-

stock: HUSBANDRY, FARMING b: the science or art of the production of plants and animals useful to man and in varying degrees the preparation of these products for man's use and their disposal (as by marketing) 2: FARMERS.

Webster's Third New International Dictionary, p. 824 & 44 (1976). Thus the plain meaning of the term "farming" does not appear to include investing in a farm, but requires that one engage in farming directly.[7] The business pursuits exclusion applies and there is no coverage.

### III.

Next we must decide whether the St. Paul personal liability catastrophe policy issued to Gust Hangsleben provides coverage. The policy contains the following business pursuits exclusion:

1. We won't cover any liability connected with the business, profession or occupation of anyone insured, such as malpractice claims against a doctor. Nor will we cover accidents happening on an insured person's business property. But we will cover accidents in and around a one, two or three-family house held for rental or a farm.

The policy defines accident as "anything that causes property damage, personal injury or death without your expecting or intending it." In interpreting this exclusion, we must determine how far the "farm" exception to the business exclusion reaches. The trial court granted St. Paul summary judgment, stating:

The claim in the instant case arises out of the sale of certified seed potatoes between commercial seed growers. Hangsleben is a partner in P & H Farms and the activity

of that partnership is to raise and sell commercial seed potatoes.

\* \* \* \* \* \*

The language of the business exclusion in the St. Paul policy is plain and unambiguous. \* \* \* [T]here is no coverage afforded Gust Hangsleben for the claims of the judgment debtors, which claims arise out of commercial transactions between commercial potato growers.

Thus it concluded that this provision barred coverage.

■ The judgment creditors argue that the exclusion provides coverage for any accident happening "in and around" a farm, regardless of whether they are commercial in nature. In contrast, St. Paul argues that this interpretation of the farming exception to the business pursuits exclusion would eliminate the business pursuits exclusion as to a farmer. It argues that the purpose of the exception to the exclusion is to guarantee that a farmer will have the same coverage as, for example, a suburban homeowner whose place of residence is not identical to his or her place of business.

We agree with St. Paul. The language in the exclusion appears to be designed so that farmers will have the same coverage as other homeowners. We believe it would violate the purpose of this personal liability policy for us to interpret the exception to the exclusion to provide coverage to cancel the exclusion. We hold that the policy does not provide coverage and reverse the court of appeals.

### IV.

■ In addition to the general liability and commercial umbrella policies, State Farm issued two personal liability umbrella policies to the Paquins. Thus we must next turn to the enforceability of the *Miller–Shugart* agreements as to those policies.

---

**7.** The parties cite *White v. State Farm Mutual Auto. Ins. Co.*, 59 Tenn.App. 707, 443 S.W.2d 661 (1969) as helpful authority. In *White*, a farmer had a personal liability policy with a business pursuits exclusion. As in this case, the business pursuits exclusion excepted farming. The insured farmer was also a partner in a bulldozing business. He was sued by an employee of the bulldozing business who was injured while clearing land the farmer had rented for the farming

operation. The court held that this liability was attributable to the bulldozing business, not the individual farmer, and thus there was no coverage. Although *White* has superficial similarities to the issues in this case, it does not shed light on the question whether investing in a farming operation and participating in a very limited fashion qualifies as "farming" within the meaning of this policy.

In *Miller v. Shugart*, we ruled that a defendant may settle a claim with a plaintiff for a stipulated sum but condition the agreement on the plaintiff's seeking recovery solely from the insurer. The parties may enter into a *Miller–Shugart* agreement when the insurer has denied coverage. In some situations, an insurer does not deny that the policy in question covers some part of the claim and provides a defense. In these instances, if the insured enters into a settlement agreement with the plaintiff without the consent of the insurer, the settlement will be deemed to have been entered into in bad faith and thus a violation by the insured of the covenants in the insurance contract. *Buysse v. Baumann–Furrie & Co.*, 448 N.W.2d 865, 874 (Minn.1989) citing *Sargent v. Johnson*, 551 F.2d 221, 230 (8th Cir.1977). If the breach is material and prejudicial, the insurance contract is void. *Buysse*, 448 N.W.2d at 874 citing *Juvland v. Plaisance*, 255 Minn. 262, 268–69, 96 N.W.2d 537, 541–42 (1959).

State Farm alleges that although it denied coverage on the corporate policies, it did not deny coverage on the personal liability policies issued to Richard and David Paquin, in such a fashion that the *Miller–Shugart* agreement between the Paquins in their individual capacities was permissible. Thus, State Farm's argument continues, it was a violation of covenants in these insurance contracts for the Paquins to enter into a *Miller–Shugart* agreement.

The personal umbrella policies of David and Richard Paquin required that certain underlying coverage be maintained in order for the policies to be valid. State Farm agreed to defend them pursuant to these policies, but reserved the right to challenge the maintenance of the underlying insurance after the trial to determine the precise amount it would have to pay on any judgment entered against them. State Farm issued a reservation of rights letter to the insureds, reserving its rights under all four policies involved. As to the Personal Liability Umbrella policies issued to Richard Paquin and David Paquin, State Farm specifically reserved its rights based on the following:

1. There is a question as to whether or not the insureds maintained the underlying insurance.

2. We will not provide coverage for a loss caused by your business operation unless underlying insurance listed on the Declarations Page provides coverage for the loss.

Eventually, State Farm denied coverage completely under the two commercial policies, but continued to defend pursuant to the personal liability umbrella policies.

In *Miller–Shugart*, we held that the stipulated settlement between the claimant and the insured was not a violation of the insured's duty to cooperate with the insurer in the litigation, although the insurer was providing a defense pursuant to a reservation of rights on the independent ground. One factor we considered in upholding the settlement was that "there was a certain distance in the relationship between the facts on which the coverage question depended and those governing the issues of liability and damages in the main action." *Buysse*, 448 N.W.2d 865, 872 (Minn.1989) (explaining *Miller–Shugart*, 316 N.W.2d 729). Furthermore, we deemed important that the settlement itself did not attempt to control the coverage question; rather the coverage question depended upon resolution of a separate issue.

In *Buysse*, however, we invalidated a *Miller–Shugart* agreement because the insured had breached its obligations to the insurer. In *Buysse*, the insured admitted negligence in a stipulation on the main action; it even went so far as to admit, in the same stipulation, negligence on other unrelated actions. The stipulated settlement amount was in excess of $1 million. The insured did all of this over the insurer's objection. *Buysse*, 448 N.W.2d at 873. We said that this stipulation:

is the coup d'etat by which the insured has wrested control of the lawsuit from the insurer, stripping it of its contractual right to defend and settle the action, and thus violating the insured's covenants.

*Id.*

We believe the Paquins' *Miller–Shugart* agreement more closely resembles the situa-

tion in *Miller–Shugart* than that in *Buysse*. The Paquins did not admit any liability, nor did they try to "hang" the insurer in any unconscionable way. The stipulation left the coverage defenses intact regarding whether the Paquins had maintained the required underlying coverage.

It was proper for the Paquins to enter into *Miller–Shugart* agreements with the Useldingers.

## V.

State Farm also argues that the *Miller–Shugart* agreements entered into between Useldingers and several defendants are unenforceable because they did not allocate liability among the defendants. The Useldingers each entered into *Miller–Shugart* agreements with the following defendants:

(1) Gust Hangsleben;

(2) Paquin Potato Company;

(3) P & H Farms;

(4) Richard Paquin;

(5) David Paquin.

We have ruled that there is no coverage under the policies issued to Hangsleben, Paquin Potato Company, and P & H Farms. Thus as to those policies, the issue of the propriety of the unallocated *Miller–Shugart* agreements is moot. We must decide, however, whether the *Miller–Shugart* agreements are enforceable as to the two personal umbrella policies issued to the Paquins.

State Farm contends that because the agreements provide that the settling defendants would be jointly and severally liable for the stipulated judgments and do not sever and allocate liability among the defendants, that the trial court properly held the agreements void. The judgment creditors argue that ordinary principles of indemnity and contribution will serve to protect the State Farm's interests and that it is not necessary to set the *Miller–Shugart* agreements aside. We agree with State Farm.

In the cases before us, the trial judge did not hold a fact finding hearing to determine the reasonableness of the settlement amounts. Rather, in granting summary judgment, the trial court held that the agreements were unreasonable as a matter of law because the damages were not allocated among the defendants in the stipulations. We believe the trial judge was correct in holding that the lack of allocation of damages made the agreements unreasonable. Except in the most unusual case, we believe it is unreasonable for a defendant to settle a case for an unspecified sum. Further, there is no efficient way for the trial court to allocate the damages among the defendants. When a *Miller–Shugart* release is challenged on reasonableness grounds, no trial on the merits of the tort claim has been had. Without knowing what each defendant has agreed to pay as its share, there is no way of judging the reasonableness or prudence of the agreement from the standpoint of each defendant. No efficient method exists here to allocate liability among various parties who have not been adjudicated liable. The trial court properly held the unallocated *Miller–Shugart* agreements unenforceable as to the insurers.

To sum up, there is no coverage for plaintiffs' claims under the State Farm's general liability policy (93 09 1438 0, issued to Paquin Potato Company, Richard A. Paquin, and David Paquin) nor under State Farm's commercial umbrella policy (93 09 64510, issued to Paquin Potato Company). *See* Part I. Nor do we find coverage for plaintiffs' claims under the policies issued by INA and St. Paul Fire and Marine to Gust Hangsleben. *See* Parts II and III.

As to State Farm's two personal umbrella policies, one issued to Richard A. Paquin, and the other to David Paquin, it appears that State Farm denied coverage on these umbrella policies because it was claiming that the underlying policies did not provide the coverage required as a condition precedent before the umbrella would take over. It was this denial that prompted the *Miller–Shugart* settlements. In any event, it now appears that the underlying policies do not provide coverage; consequently, it may be that the two personal umbrella policies do not provide coverage either. This matter, as well as any others, are best resolved by the trial court.

We reverse and remand for further proceedings in accordance with this opinion.

Reversed and remanded.

COYNE and PAGE, JJ., took no part in the consideration or decision of this case.