**CARPOLE'S INC., a Minnesota corporation, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**Civ. No. 6–81–825.**

United States District Court, D. Minnesota, Sixth Division.

April 23, 1982.

Patrick J. Neaton, Hutton, Kennedy & Neaton, P. A., Minneapolis, Minn., for plaintiff.

George W. Flynn, James Duffy O'Connor, Faegre & Benson, Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

DEVITT, Senior District Judge.

This matter is before the court on defendant's motion for summary judgment. This is a declaratory judgment action originally brought in state court and removed to this court on the basis of diversity of citizenship.

Plaintiff Carpole's Inc. ("Carpole's") manufactures and sells liquid fish fertilizer. Prior to April 1980, plaintiff sold 1500 gallons of fertilizer in five gallon plastic containers to Nine Star Marketing, Inc. ("Nine Star"). The containers were defective and leaked. Nine Star incurred losses for both lost fertilizer and the costs of clean-up and removal. Nine Star sued Carpole's in state court for damages in the amount of $12,000 —$10,000 for the loss of the fertilizer and $2,000 in consequential damages for clean-up and removal.

Carpole's tendered the defense of the lawsuit to defendant Insurance Company of North America ("INA"), which refused to provide a defense. Carpole's then commenced this lawsuit, seeking a declaration that INA is required to provide a defense to the suit brought by Nine Star and that the insurance policy under which INA provides insurance to Carpole's covers all or part of the claims by Nine Star against Carpole's.

INA insured Carpole's under a standard comprehensive general liability insurance policy. Under the terms of that policy, coverage for property damage does not include "Property damage to the Named Insured's products arising out of such products or any part of such products . . . ." The policy defines "Named Insured's Products" as: "(G)oods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under his name, including any container thereof . . . ."

INA argues that this exclusion bars any recovery by the plaintiff under the insurance policy. Carpole's concedes that the cost of the containers are clearly excluded by the policy but argues that the value of the fertilizer itself and the costs of clean-up and removal are covered by the policy, and that INA thus has the duty to defend the lawsuit and indemnify Carpole's for these damages.

Under Minnesota law, the damages incurred as a result of the loss of the fertilizer itself are excluded from coverage by the exclusionary clause at issue. *See Ohio Casualty Insurance Co. v. Terrace Enterprises, Inc.*, 260 N.W.2d 450 (Minn.1977); *Hauenstein v. St. Paul-Mercury Indemnity Co.*, 242 Minn. 354, 65 N.W.2d 122 (1954); *Western Casualty and Surety Co. v. Polar Panel Co.*, 457 F.2d 957 (8th Cir. 1972) (applying Minnesota law).

Where the losses incurred to the containers and the product of the plaintiff are excluded from coverage under the policy, it is logical that the cost of cleaning up the leaking product is also excluded from coverage under the policy. Many cases involving

**8**

a product loss will entail removal of the damaged or defective product. To find coverage for the cost of removing the product where coverage for the product itself is excluded would effectively negate the exclusion. In *Biebel Bros., Inc. v. United States Fidelity & Guaranty Co.*, 522 F.2d 1207 (8th Cir. 1975) (applying Missouri law), the court was called upon to construe an exclusionary provision in an insurance policy excluding coverage for any property damage to the insured's products arising out of such products or any part thereof. The insured was a roofing contractor who was putting on a roof that required installing a number of different materials in layers on the roof. When the work was nearly completed, it was discovered that the bottom layer of roofing asphalt was defective, necessitating the removal of a number of layers of materials already installed. The contractor-insured sought recovery under the insurance policy for the cost of removing the damaged materials, and the cost of replacing them with new materials, including labor. It also sought damages for overhead and profit. The court reversed the trial court's denial of summary judgment, holding that since the only property damage was to the products of the insured, *i.e.*, the layers of materials which were damaged by the bottom layer of defective asphalt, the exclusion in the policy precluded recovery. The cost of removal was not excepted from the exclusion. The *Biebel* case suggests, and reason dictates, that such costs of removal are not separable as an item of damage from the product itself.

Accordingly, defendant's motion for summary judgment is hereby GRANTED.