**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota corporation, Plaintiff,**

v.

**FUTURA COATINGS, INC., a Missouri corporation, and Jeffrey Jarboe, an individual, Defendants.**

No. 4–96–981 (DSD/JMM).

United States District Court, D. Minnesota, Forth Division.

Feb. 17, 1998.

Jeffrey John Bouslog, Kenneth C. Corbett, Oppenheimer Wolff & Donnelly, St. Paul, MN, for Plaintiff.

Cortney S. LeNeave, Hunegs Stone Koenig & LeNeave, Minneapolis, MN, for Defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on the cross-motions for summary judgment of plaintiff St. Paul Fire and Marine Insurance Company and defendants Futura Coatings, Inc. and Jeffrey Jarboe. Based on a review of the file, record, and proceedings herein, the court grants plaintiff's motion and denies defendants' motion.

## BACKGROUND

Plaintiff St. Paul Fire and Marine Insurance Company (hereafter "St. Paul") is a Minnesota corporation with its principal place of business in Minnesota. Defendant Futura Coatings, Inc., (hereafter "Futura") is a Missouri corporation with its principal place of business in Missouri. Defendant Jeffrey Jarboe was at all relevant times the sales manager of Futura's Industrial Lining Division, and is a citizen of Missouri. The court's jurisdiction in this case is based on 28 U.S.C. § 1332(a).

This is a declaratory judgment action in which St. Paul seeks a judicial declaration that it is not liable to indemnify or defend Futura and Jarboe in a state court proceeding concerning the alleged failure of several Futura sealants. In late 1987, the Connecticut Light and Power Company determined it would need a number of new equalization basins at its Norwalk, Montville, and Middletown facilities. The equalization basins were to be used to hold waste water generated by the power plants at these facilities. The basins were to be made of concrete, and required a sealant that could withstand great variations in temperature, acidity and alkalinity, and abrasion and corrosion. Universal Applicators was hired to apply Futura coating products to the basins. Futura allegedly made representations that their products would meet Connecticut Light and Power's

needs and provided instructions to Universal concerning the proper technique for applying the products.

Connecticut Light and Power, the Northeast Utilities Service Company (which purchased and contracted the services necessary for the project), and Universal (hereafter "claimants") allege that problems with the Futura products applied to the basins began to occur upon commencement of Universal's application of the coating in October 1988. The problems allegedly began with concrete "gassing" that left pinholes in the Futura coating lining the basins. Claimants consulted with Futura, which provided advice to remedy the problem. Although Universal followed Futura's instructions, the coating system allegedly failed completely and the basins had to be stripped and recoated at substantial expense.

In July 1994, claimants filed suit against Futura and Jarboe in Hennepin County District Court (hereafter "underlying action").[1] Claimants alleged that Universal was hired to coat the interiors of the basins with a Futura coating system according to specifications provided by Futura. Claimants further alleged that Futura's coating system did not perform as Futura had promised, and brought claims for fraud and misrepresentation, negligent misrepresentation, breach of warranties, breach of contract, deceptive trade practices, consumer fraud, unlawful trade practices, and promissory estoppel. Universal sought to recover $338,000 in lost profits, and Connecticut Light and Power sought to recover $632,643 in costs for repairing the Futura lining system and $376,000 in anticipated future costs for further repairs. Futura tendered defense of the underlying action to St. Paul on August 1, 1994. St. Paul initially assumed defense of the case under a reservation of rights and assigned counsel to defend Futura pending a coverage investigation. St. Paul subsequently informed Futura of its determination that no coverage existed under Futura's policy for the claims in the underlying case, and withdrew from the defense of Futura as of November 15, 1995.

Futura's coverage counsel objected to St. Paul's withdrawal from its defense and the denial of coverage for any damages awarded claimants. In this action, St. Paul seeks an order declaring that it is not liable under any insurance policy held by Futura to defend Futura in the underlying action or to indemnify Futura for any damages awarded in that action.

On December 12, 1997, the Honorable Marilyn Rosenbaum of the Hennepin County District Court issued her opinion in the underlying action. She found all of the claimant's allegations barred by the two-year statute of limitations for defects in improvements to real property, and dismissed all the claims with prejudice. See Findings of Fact, Conclusions of Law and Order for Judgment at 11. Futura's claim for indemnification is therefore moot, and the only issue before this court is St. Paul's duty to defend Futura in the underlying action.

## DISCUSSION

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material only when its resolution affects the outcome of the case. Id. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. Id. at 252. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Id. at 249.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. Id. at 250. The nonmoving

---

1. Defendants Futura and Jarboe will be referred to collectively as "Futura."

party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. *See Anderson,* 477 U.S. at 250–51. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23.

Because jurisdiction in this case is based on diversity, the court applies the substantive law of Minnesota. That law is well-settled that interpretation of an insurance contract is a question of law. *Jenoff, Inc. v. New Hampshire Ins. Co.,* 558 N.W.2d 260, 262 (Minn.1997) ("Insurance coverage issues and the interpretation of insurance contract language are questions of law."); *Haarstad v. Graff,* 517 N.W.2d 582, 584 (Minn.1994); *Meister v. Western Nat. Mut. Ins. Co.,* 479 N.W.2d 372, 376 (Minn.1992); *Iowa Kemper Ins. Co. v. Stone,* 269 N.W.2d 885, 887 (Minn. 1978). Therefore, the issues regarding interpretation and construction of the insurance policy held by Futura are properly before the court on summary judgment.

As stated by the Minnesota Supreme Court,

> [i]n typical liability insurance contracts, the insurer has an obligation to indemnify an insured for covered claims and, if a claim is not clearly outside coverage, the insurer has a duty to defend. The general rule is that the insurer's duty to defend is determined by considering the allegations of the complaint in light of the relevant policy language. In addition to looking at the complaint, the insurer can look to facts outside the complaint to determine whether coverage exists.

*Haarstad,* 517 N.W.2d at 584 (quotations and citations omitted). *See also Auto–Owners Ins. Co. v. Todd,* 547 N.W.2d 696, 698 (Minn. 1996) ("An insurer's duty to defend its insured arises when any part of the claim against the insured is arguably within the scope afforded by the policy.") The duty to defend is broader than the duty to indemnify. *Id.*

When interpreting insurance contracts, the court must ascertain and give effect to the intent of the parties as reflected in the insuring contract. *Jenoff,* 558 N.W.2d at 262 (citing *Minnesota Min. and Mfg. Co. v. Travelers Indem. Co.,* 457 N.W.2d 175, 179 (Minn.1990)). The insurance contract must be construed as a whole, with unambiguous language given its plain and ordinary meaning. *St. Paul Fire and Marine Ins. Co. v. National Real Estate Clearinghouse, Inc.,* 957 F.Supp. 187, 189 (D.Minn.1997); *Bob Useldinger & Sons, Inc. v. Hangsleben,* 505 N.W.2d 323, 328 (Minn.1993). Ambiguity exists if the language of the policy is reasonably subject to more than one interpretation. *Jenoff,* 558 N.W.2d at 262.

St. Paul, as insurer in this case, has the burden of proving that a policy exclusion applies, relieving it of the duty to defend. *Henning Nelson Const. Co. v. Fireman's Fund American Life Ins. Co.,* 383 N.W.2d 645, 652 (Minn.1986) (citing *Caledonia Community Hospital v. St. Paul Fire & Marine Ins. Co.,* 307 Minn. 352, 239 N.W.2d 768, 770 (1976)); *Auto–Owners Ins. Co.,* 547 N.W.2d at 698 ("An insurer seeking to escape its duty to defend has the burden of establishing that all parts of the cause of action fall clearly outside the scope of coverage."). In interpreting a policy exclusion, the court must construe any ambiguity in the language of the policy in favor of the insured. *Haarstad,* 517 N.W.2d at 584 ("A 'policy should be construed as a whole with all doubts concerning the meaning of language employed to be resolved in favor of the insured.' ") (citing *Canadian Universal Ins. Co., Ltd. v. Fire Watch, Inc.,* 258 N.W.2d 570, 572 (Minn. 1977)); *Henning Nelson Const. Co.,* 383 N.W.2d at 652. If the claim is not clearly outside coverage, the insurer has a duty to defend. *Prahm v. Rupp Const. Co.,* 277 N.W.2d 389, 390 (Minn.1979). The court, however, may not read an ambiguity into the plain language of an insurance contract in order to find coverage in favor of the insured.

*St. Paul Fire,* 957 F.Supp. at 189; *Henning Nelson Const. Co.,* 383 N.W.2d at 652.

The court's task is to examine the language of the policy at issue and determine if the claimants' allegations in the underlying action are covered under that policy or instead fall within an exclusion to coverage. The policy at issue is St. Paul Policy No. CK05500085, which covered Futura for the period from May 20, 1991 to May 20, 1992. That policy provided commercial general liability protection on a "claims-made" basis. *See* Exhibit J to Affidavit of Kenneth C. Corbett (Docket No. 14). The policy defines the terms and exclusions relevant here. After examining the policy, the court concludes that the claimants' allegations fall within both the "impaired property" and "damage to your products or completed work" exclusions; therefore, St. Paul had no duty to defend Futura in the recently-decided underlying action.

The court's analysis begins with an examination of the relevant policy language. The "impaired property" exclusion provides:

> **Impaired property.** We won't cover property damage to impaired property, or property that hasn't been physically damaged, that's caused by:
>
> —your faulty or dangerous products or completed work; or
>
> —a delay or failure in fulfilling the terms of a contract or agreement.
>
> But we won't apply this exclusion to damages that result from the loss of use of other property not physically damaged that's caused by sudden and accidental physical damage to your products or completed work after they've been put to their intended use.

Insurance Policy Number CK05500085, Exhibit J to Affidavit of Kenneth C. Corbett at 11. The policy defines the relevant terms in this exclusion as follows:

> **Impaired property means** tangible property, other than your products or completed work, that can only be restored to use by:
>
> —the adjustment, repair, replacement or removal of your products or completed work which forms a part of it; or
>
> —your fulfilling the terms of a contract or agreement.

**Property damage** means:

—physical damage to tangible property of others, including all resulting loss of use of that property; or

—loss of use of tangible personal property of others that isn't physically damaged.

**Your work** means work done by or for you, including the materials, parts or equipment provided in connection with your work. It includes warranties or statements made about the fitness, quality, durability or performance of your work.

**Your completed work** means your work that is completed at the earliest of the following times, including work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete:

—When all of the work called for in your contract has been completed.

—When all of the work to be done at the work site has been completed, if your contract calls for work at more than one site.

—When that part of the work at the work site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

*Id.* at 2, 6, 14. The "impaired property" exclusion applies here, and precludes coverage for all allegations in the underlying action relating to the cost of removing and replacing the Futura products in Connecticut Light and Power's basins, as well as any loss of use of the basins caused by the need to replace or repair the Futura sealants lining the basins.

The claimants in the underlying action allege that Futura made misrepresentations about its products, and that the coating system did not perform as promised after the sealant was applied according to Futura's instructions. The initial application of the Futura coating system allegedly resulted in a "gassing" problem that left "pinholes" in the coating lining the concrete basins. Complaint, Exhibit A to Affidavit of Kenneth C. Corbett at ¶ 26. Allegedly, upon the advice of Futura, Universal took several steps to remedy the problem, including "brushblasting" the concrete, applying a competitor's

product to fill holes and imperfections, and reapplying the Futura coating product. Despite these efforts, the coating system allegedly peeled, bubbled, and failed completely, necessitating extensive remedial efforts. The record reveals that not only did Futura provide the actual products used to coat the basins, but also consulted with Universal and made recommendations on the products' application. Futura even sent a representative to the site to analyze the problems occurring. *Id.* at ¶ 27.

The "impaired property" exclusion precludes coverage for property damage to impaired property, or property that has not been physically damaged, caused by Futura's faulty products or completed work. Futura's work includes the products supplied to Universal for application to the basins and statements made by Futura concerning the fitness, quality, durability, or performance of the products. The court therefore agrees with St. Paul that "Futura's activities with respect to the entire coating effort constitute its 'work.'" Mem. in Supp. of St. Paul Fire and Marine Insurance Company's Mot. for Summ. J. (Docket No. 13) at 20. *See St. Paul Fire and Marine Insurance Co. v. American Chemical Co.*, Civil No. 3–94–569 (D.Minn. Feb. 29, 1996) (holding that negligent advice falls within the ambit of "completed work" and "your work" under an impaired property exception similar to the one presented by this case).

The definition of "completed work" requires that the materials provided in connection with Futura's work be put to their intended use. The coating in this case was put to its intended use because the basins were used to hold untreated water before its release into the environment. Futura's work therefore constitutes "completed work" as used in the "impaired property" exclusion. Further, the basins had to be recoated to be restored to use. Because the basins could only be restored to use by the "adjustment, repair, replacement or removal" of Futura's coating system, there is impaired property. Because the basins were impaired by Futura's completed work, the "impaired property" exclusion applies.

Futura proffers a number of arguments in support of its contention that the "impaired property" exclusion is inapplicable. First, Futura argues that the problem with the basins was a result of Universal's improper application of Futura products, and not the product itself or any advice or instructions rendered by Futura. Futura's argument, however, is baseless given that the complaint in the underlying action makes no such allegations. The allegations in that complaint all detail alleged damages caused solely by Futura's product and instructions, warranties, and representations. Indeed, Universal is a plaintiff in the underlying action, seeking damages from Futura.

Next, Futura argues that the "impaired property" exclusion is void because Futura was not notified of its presence when it switched to "claims made" coverage in 1986. This argument fails for at least two reasons. First, Futura must be provided notice of a change in coverage only if such change is a substantial reduction in coverage. *See Canadian Universal Insurance Co., Ltd. v. Fire Watch, Inc.*, 258 N.W.2d 570, 575 (Minn.1977) ("[W]hen an insurer by renewal of a policy or by an endorsement to an existing policy substantially reduces the prior insurance coverage provided the insured, the insurer has an affirmative duty to notify the insured in writing of the change in coverage. Failure to do so shall render the purported reduction in coverage void.") The "impaired property" exclusion in the policy at issue did not substantially reduce the coverage afforded Futura under an "occurrence" policy carried in 1985–86. That policy contained a "business risk" exclusion:

> **Business Risk.** We won't cover loss of use of tangible personal property that hasn't been damaged when the loss of use is caused by your failure to live up to a contract or by the failure of your products or work to live up to your promises. But we will cover loss of use of tangible property of others that's caused by sudden or accidental damage or destruction of your products or work after they've been used by another person.

Exhibit 2 to Affidavit of Courtney S. LeNeave (Docket No. 17). When this "business risk" exclusion is compared with the impaired property exclusion contained in the

"claims made" policies, no substantial reduction in coverage can be discerned. Both provisions exclude coverage for the loss of use of undamaged property caused by the failure of Futura's products to perform as promised.

 Even if there were a substantial reduction in coverage, the "impaired property" exclusion would still be effective in all policies renewed by Futura after sufficient notice of such change was provided by St. Paul. The court finds that, at the latest, Futura received notice of a reduction in coverage in August 1989. On August 10, 1989, St. Paul issued a letter to Futura in connection with the "Big Spring ISD" claim. *See* Exhibit B to Supplemental Affidavit of Kenneth C. Corbett (Docket No. 20). On page two of that letter, St. Paul cited the impaired property exclusion. The letter was sent to Jarboe, who by his own admission "is knowledgeable concerning Futura's purchase of insurance coverages, including Futura's purchase of a general liability insurance policy from St. Paul Fire & Marine Insurance Company with coverage beginning on May 20, 1985." Affidavit of Dean Jarboe (Docket No. 18) at ¶ 2. The court therefore finds that when Futura renewed its "claims made" policy in 1990 and 1991, it was on notice of any reduction in coverage.

 Finally, Futura's argument that the "sudden and accidental" exception to the "impaired property" exclusion applies is without merit. The policy provides that St. Paul will not apply the "impaired property" exclusion "to damages that result from the loss of use of other property not physically damaged that's caused by sudden and accidental physical damage to your products or completed work after they've been put to their intended use." Exhibit J to Affidavit of Kenneth C. Corbett at 11. Here, the alleged cracking and peeling of the Futura coating was not sudden and accidental, but became apparent only as time passed after application. The "gassing" that occurred during application also does not fall within this exception because it occurred before the product was put to its intended use. Indeed, none of the allegations in the complaint in the underlying action fall within the ambit of the "sudden and accidental" exception.

 Not only is the "impaired property" exclusion applicable here, but so too is the "damage to your products or completed work" exclusion. That exclusion states:

**Damage to your products or completed work.** We won't cover damage to any of your products that's caused by the product itself or by any of its parts.

. . .

Nor will we cover damage to your completed work that's caused by the work itself or by any of its parts.

Insurance Policy Number CK05500085, Exhibit J to Affidavit of Kenneth C. Corbett at 11. Important to this exclusion is the definition of "your products":

**Your products** mean goods or products that:

—you;

—others using your name; or

—others whose business or assets you've acquired;

have manufactured, sold, handled, distributed or disposed of, including containers, materials, parts or equipment provided in connection with your products. It includes warranties or statements made about the fitness, quality, durability or performance of your products.

*Id.* at 6. Included within this definition are the actual materials sold and any accompanying warranties and statements. Here, the damages alleged by claimants in the underlying action include the cost of repairs already made to the lining system and anticipated future repair costs. These repairs were necessitated by the damage to Futura's lining system caused by the goods sold by Futura and its accompanying representations.

Futura claims this exclusion is not applicable because the claimants in the underlying action seek to recover damages beyond those necessary to repair the coating materials, including damages for loss of use of the basins and damage to the concrete composing the basins themselves. The court has read the complaint in the underlying action, and nothing contained therein alleges damage to anything other than the coating system. The complaint simply alleged that Futura's product, instructions, representations,

and warranties caused the problems with the basins. Universal's application of Futura's product is not alleged to have caused the damage. Therefore, the allegations are expressly excluded from coverage by the "damage to your products or completed work" exclusion.

## CONCLUSION

Based on a review of the file, record, and proceedings herein, the court concludes that both the "impaired property" and "damage to your products or completed work" exclusions contained in the St. Paul policy are applicable. Therefore, St. Paul had no duty to defend or indemnify Futura or Jarboe in the underlying action. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for summary judgment is granted;

2. Defendants' motion for summary judgment is denied.

**LET JUDGMENT BE ENTERED AC-CORDINGLY.**